Matter of M.D. v T.D. (2006 NY Slip Op 50557(U))

[*1]

Matter of M.D. v T.D.

2006 NY Slip Op 50557(U) [11 Misc 3d 1074(A)]

Decided on February 6, 2006

Family Court, Westchester County

Duffy, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on February 6, 2006

Family Court, Westchester County
In the Matter of M.D., Petitioner,
against
T.D. and S.G., Respondents.
V-09XXX-04/04A

Izhak Ben-Meir, Esq.
720 Milton Rd.
Rye, New York 10580
for Respondent
Thomas Fanelli, Esq. 200 No. Central Ave.
Hartsdale, New York 10530
Law Guardian
Robert Schneider, Esq.
92 South Central Ave.
Hartsdale, New York 10530
Sylvia Goldschmidt, Esq.
One North Lexington Ave.
White Plains, New York 10601

Colleen D. Duffy, J.
On July 2, 2004, Petitioner-grandmother MD filed petitions against her daughter TD and SG, parents of the Subject Child MG (DOB:), for an order of custody of the Subject Child. Thereafter, Petitioner MD also filed a family offense petition seeking an order of protection as against TD on behalf of the Subject Child and herself. On ____, 2004, the Westchester County Department of Social Services ("DSS") filed a neglect petition as against Respondent mother alleging, inter alia, inadequate guardianship. On consent of the parties, the matters were consolidated for the purposes of trial. The trial was commenced on November 16, 2004. The trial continued over the course of a one year period on the following dates: January 28, 2005, February 10, 2005, April 20-21, 2005, June 29, 2005, August 30, 2005 and November 1, 2005. After DSS rested its neglect case, upon motion by Respondent-mother's counsel, the neglect petition was dismissed. The custody aspect of the trial continued and was concluded on November 1, 2005. The matter is sub judice.
Prior to the trial's conclusion, pursuant to Notice of Motion, dated October 11, 2005, [*2]Respondent-mother TD moved for a mistrial; and, in the alternative, for an order relieving assigned counsel Izhak Ben-Meir from representing Respondent-mother. Respondent SG and the Law Guardian for the Subject Child filed opposition papers in response to Respondent-mother's motion.
For the reasons set forth herein, Respondent-mother's motion is denied in all respects.
CPLR § 4402 provides that "at any time during the trial, the court, on motion of any party, may order a continuance or a new trial in the interests of justice on such terms as may be just." The legislative history of section 4402 indicates that it is a device "to cancel or discontinue a trial in order to start it afresh before a new jury or continue it at a later time before the same one. " David D. Siegel, New York Practice, 4th Ed. Section 403, Motion for Mistrial, pp. 681-2; see Schultze v. Huttlinger, 150 App. Div. 489, (1st Dept. 1912). The provision is designed to prevent a substantial possibility of injustice to litigants where no other remedy to prevent jury bias exists. Rendo v. Schermerhorn, 24 AD2d 773 (3d Dept. 1965). In order for the Court to grant a new trial, the movant must show that prejudice to the party or the substantial possibility of injustice will likely result unless a new trial is granted. Id.
Here, Respondent-mother has made no such showing. Respondent-mother appears to contend that the discord between Respondent-mother and her counsel is so great that it has prevented the Respondent-mother from obtaining a fair trial; and that the Court's response to Respondent-mother's counsel's request for an adjournment on August 30, 2005 somehow also has prejudiced Respondent-mother. Respondent-mother also contends that she has not had the opportunity for a fair trial because the Court imposed time limitations upon counsel in their examination of witnesses. None of Respondent-mother's contentions have merit.
As an initial matter, the Court finds that Respondent-mother has not been prejudiced by nor would substantial injustice occur because of her attorney's representation of her in this matter. Mr. BenMeir successfully represented Respondent-mother throughout this proceeding raising objections, moving to dismiss the neglect petition - which motion was granted - and preparing Respondent-mother and other witnesses for questioning. Moreover, he has cross-examined witnesses called by other counsel and examined witnesses on behalf of Respondent-mother. According to Mr. BenMeir, he made numerous efforts to contact Respondent-mother during the course of the litigation to address issues and strategy relating to the litigation. Any failure by Respondent-mother to maintain contact with Mr. BenMeir was at her own choice.
To the extent that Respondent-mother contends that she has been prejudiced or there is a substantial possibility of injustice because the Court has refused to relieve her counsel and assign new counsel, such contention is baseless. The Family Court Act's guarantee of assistance of counsel is not an absolute one. Mooney v. Mooney, 243 AD2d 840, 841 (App. Div. , Third Dept. 1997); see Matter of Chiild Welfare Admin. [John R.] v. Jennifer A., 218 A.D2d 694, 696, lv den'd, 87 NY2d 804. In order to have substitute counsel appointed, a party must establish that good cause exists necessitating the dismissal of assigned counsel. Mooney v. Mooney at 841-2. Here, no good cause exists or existed to relieve Respondent-mother's counsel.
The Court notes that Mr. BenMeir is the second attorney to be appointed to Respondent-mother. When, at the early stages of these proceedings, Respondent-mother asked the Court to relieve Mr. Stephen Kolnick, assigned counsel, and to reassign new counsel, the Court did so based upon Respondent-mother's representation that she was unable to communicate with her [*3]counsel such that they could not cooperate. Upon the agreement and counsel of Mr. Kolnick, the Court relieved him and assigned Mr. BenMeir.
On the scheduled day of trial, Mr. BenMeir, not Respondent-mother, filed an order to show cause with this Court seeking to be relieved as counsel for Respondent-mother. Mr. BenMeir contended that he and his client were unable to communicate and that Respondent-mother was not cooperating with him in the strategy of the litigation. The Court conducted a voir dire of Respondent-mother regarding Mr. BenMeir's application to be relieved. Respondent-mother testified that she believed that she had cooperated with Mr. BenMeir. At that time Respondent-mother did not join Mr. BenMeir's application; indeed, she said she had no objection to Mr. BenMeir's continued representation of her.
Notwithstanding Respondent-mother's position, at that time Mr. BenMeir continued to object to being assigned as counsel contending that working with Respondent-mother was "too stressful" for him and his health. (November 16, 2004 Transcript, pg. 5-7). Notably, Mr. BenMeir made no such mention of health issues in that order to show cause. When the Court pointed that out to Mr. BenMeir and inquired as to whether Mr. BenMeir would leave the 18-b panel due to these supposed health issues, Mr. BenMeir declined to do so contending that only this case was "too much". The Court denied Mr. BenMeir's application, admonished Respondent-mother and Mr. BenMeir to speak and interact professionally to each other, and reminded Mr. BenMeir that, ultimately, if his client disagrees with his trial strategy, he must accede to his client's wishes after fully informing her of the consequences. The Court also informed Mr. BenMeir that he could state on the record that his method of proceeding was at the direction of his client, even if it were contrary to his advice.
On several other occasions, Mr. BenMeir asked the Court to be relieved as counsel reiterating the same reasons his health and lack of cooperation by Respondent-mother with his trial strategy. As to Mr. BenMeir's issues of his own health, the Court notes that although he contends his health is at issue, he has declined to leave the 18-b panel and simply has sought to avoid this litigation because he has a "difficult" client. Unfortunately for Mr. BenMeir, as a member of the panel assigned to represent indigent counsel, he cannot pick and choose his clients. If Mr. BenMeir is healthy enough to remain on the 18-b panel, as he has chosen to do, he is obligated to vigorously advocate for his client. Upon his acceptance of this assignment from the Court, he cannot then refuse to continue to represent that client solely because the client is difficult. Cite
The Court found that Mr. BenMeir's health contentions - that apparently are specific only to this case - did not constitute good cause to relieve counsel.[FN1] Notably, Mr. BenMeir did not [*4]contend that his health prevented him from practicing law, but only that he did not want to proceed with this case.
With respect to the contention of lack of cooperation by Respondent-mother, the Court noted that original counsel was relieved for a similar reason. The Court also noted that, in this case, the mental health of Respondent-mother is an issue in the litigation. Thus, it appears that any difficulty of Mr. BenMeir in his interactions with Respondent-mother is not simply a clash of personalities that could be remedied by assigning new counsel. It appears that any counsel assigned to Respondent-mother would face the same frustrations that Mr. BenMeir contends he has had with his client. These are issues any attorney would face with respect to Respondent-mother or any other strong-minded client who wish to control the presentation of his/her case. The Court repeatedly reminded Mr. BenMeir that, notwithstanding his views on litigation strategy, he would be required to accede to the directions of his client - after he had advised her of the possible consequences. Thus, Mr. BenMeir's complaints that Respondent-mother wouldn't cooperate with his trial strategy were moot issues - Mr. BenMeir ultimately was required to accede to the trial strategy of Respondent-mother. Accordingly, the Court found that no good cause exists or existed to relieve Mr. BenMeir.
Although Respondent-mother joined Mr. BenMeir's most recent application to be relieved, such application was made after August 30 - when more than ninety percent of the trial had been completed. In response to Respondent-mother's request to relieve Mr. BenMeir, the Court informed Respondent-mother that she could retain counsel of her own choosing, that she could proceed pro se, or she could continue with Mr. BenMeir as assigned counsel. Respondent-mother continued and completed the trial represented by Mr. BenMeir.[FN2]
Respondent-mother's contention that the Court's response on August 30, 2005 to Mr. BenMeir's application for an adjournment - when counsel already had been notified that August 30 was the last day scheduled for trial - somehow has prejudiced her or caused a substantial probability of injustice also is without merit. The case was, in fact, adjourned at Mr. BenMeir's request to one additional date.
The Court's initial response denying Mr. BenMeir's renewed request for an adjournment was due, in large part, to the fact that the Court perceived Mr. BenMeir's contention of ill-health as a delaying tactic designed to procure an adjournment which the Court previously had denied.[FN3] Nonetheless, the Court granted Mr. BenMeir's request and adjourned the matter for yet another date - November 1, 2005 - when the trial was finally concluded. Thus, any contention that the Court's discussion with counsel before granting the adjournment somehow prejudiced Respondent-mother is without merit.
Moreover, any contentions by Respondent-mother that time limitations imposed by the [*5]Court somehow have prejudiced her are entirely baseless. Indeed, this Court has more than accommodated Respondent-mother and her counsel in terms of the scheduling and the length of this trial in light of the serious nature of the case. As an initial matter, the Court notes that, from the outset of the case, the trial was recessed, adjourned or rescheduled at numerous times at the request of Respondent's counsel. (See Transcript, November 16, 2004, pg. 60; April 21, 2005, pg. 174; August 30, 2005 , pp. 185-187.)
Moreover, the Court afforded Respondent-mother ample time to call witnesses and examine such witnesses. For example, on the third day of trial, February 10, 2005, the Court, after consultation with counsel, set two additional dates to continue the trial - April 20 and 21 - and directed counsel and the parties that April 21, 2005 would be the last trial date. The Court also directed counsel that time limits would be imposed on all counsel with respect to their inquiry of witnesses. The Court asked each counsel how many witnesses each would call. Respondent-mother's counsel indicated that he would call three or four witnesses. (February 10, 2005 Transcript, pg. 173).
Thereafter, on April 21, 2005, when Respondent-mother was directed to begin her case, two of Respondent-mother's witnesses were examined. Upon the conclusion of their testimony, knowing that the Court previously had set that day as the final day for trial, Respondent-mother's counsel represented to the Court that he had one witness remaining; that being Respondent-mother. (April 21, 2005 Transcript, pg. 174). However, rather than commence his inquiry of this crucial witness, Respondent-mother's counsel complained of being tired and asked for a continuance. (April 21, 2005 Transcript, pg. 174). Although the Court denied his request in part, the Court accommodated the complaint of ill-health by Respondent-mother's counsel by directing that the day's proceedings would not go past 5:00 p.m and the matter would be continued to another court date.
At that time, counsel for Respondent-mother then commenced his examination of his one remaining witness- Respondent-mother. The day's proceeding ended at approximately 5:00 p.m. and was reconvened for June 29, 2005.
Thereafter, on June 29, 2005, counsel agreed to examine the Law Guardian's witness - Dr. JM - out of turn to accommodate the witnesses' schedule. Dr. JM testimony was concluded on June 29, 2005. Thereafter, the Court set August 30, 2005 as the last day for the hearing. On that date, despite the earlier representations by counsel for Respondent-mother that he had one witness - TD -, and, having been directed by the Court about the time limitations, counsel for Respondent-mother sought to call two other witnesses to testify.
Upon application by the counsel for the other parties, the Court directed that counsel for Respondent-mother provide an offer of proof to the Court as to the relevance of the testimony of these two additional witnesses. Upon Respondent-mother's offer of proof with respect to Dr. Burton, the Court consented to allow his testimony. After approximately two and a half hours of testimony by Dr. Burton, most of it on direct examination, counsel for Respondent-father sought an offer of proof with respect to the second witness contending that Mr. BenMeir never met his offer of proof with respect to Dr. Burton's testimony. The Court agreed. Nonetheless, after Respondent-mother's counsel made an offer of proof as to the testimony of his next witness, Dr. DeLaTorre, the Court allowed Respondent-mother's counsel to examine that witness after reminding Respondent-mother's counsel that it was the last day of trial and that he had to select [*6]the witnesses and questions at his choosing.
Notwithstanding the Court's directive that it was the last day of trial, during the late afternoon of August 30, 2005, Respondent-mother's counsel again requested a continuance or adjournment. After the Court denied Respondent-mother's application to adjourn the matter for another date, Respondent-mother's counsel complained of ill-health and contended he could not continue with the trial. Notably, the August 30 hearing, which was scheduled for all-day, began late because Respondent-mother had not timely appeared in Court for the time the matter was calendared. Nonetheless, after on-the-record colloquy with counsel, the Court granted the adjournment.
Based upon the foregoing, all of Respondent-mother's contentions that she is entitled to a mistrial or new trial are wholly without merit.
Indeed, the custody of the Subject Child - the key issue in this case - has been an open issue in excess of one year. A mistrial or new trial would keep that child's custody status in limbo for an even greater length of time. The Court has heard testimony from more than ten witnesses and hundreds of pages of documents have been accepted into evidence. The child's need for finality and permanency, as well as the additional court costs and legal fees that the parties would have to bear, and the concerns of judioial efficiency and economy, all dictate that no mistrial or new trial should be ordered.
This constitutes the Decision and Order of this Court.
The Court considered the following papers in deciding this motion: Respondent-mother's Notice of Motion, dated October 11, 2005, Attorney's Affirmation and Exhibit attached thereto; Attorney for Respondent-father's Affirmation in Opposition, dated October 19, 2005; Law Guardian's Reply Affirmation, dated October 26, 2005.
DATED: February 6, 2006
 Yonkers, New YorkENTERED:
___________________________
Colleen D. Duffy
ACTING FAMILY COURT JUDGE
DISTRIBUTION

Footnotes

Footnote 1:As set forth further herein, the Court considered Mr. BenMeir's complaints about his health together with the potential prejudice that could result to his client and the parties in this case. As noted above, Mr. BenMeir's first application to be relieved occurred on the day of trial. The prejudice caused by a further delay in the proceedings so that new counsel could familiarize him/herself with the case, the need for finality and permanency in the life of the Subject Child, as well as the increased financial costs to the parties - two of whom have retained counsel, as well as judicial efficiency and economy, far outweigh the contention by Mr. BenMeir that the case is too stressful for him.

Footnote 2:The Court notes that the trial now has been completed. As the motion for a mistrial is denied by this Court, Mr. BenMeir's most recent application to be relieved also is denied as moot.

Footnote 3:The Court directed Mr. BenMeir to show cause before the Court as to why costs and fees of counsel should not be assessed against him for the additional trial delay. Ultimately, on November 1, 2005, opposing counsel and the Law Guardian informed the Court that they would not seek reimbursement from Mr. BenMeir for their fees for the additional trial date.